UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 1:08CR132 |
| | ) | |
| RAFAEL PARADA-MENDOZA, | ) | Honorable Liam O'Grady |
| a.k.a. "Cheve," "Chevi," "Cheby," | ) | |
| | ) | Sentencing Date: September 11, 2009 |
| GABRIEL HOSMAN PEREZ-AMAYA, | ) | |
| a.k.a. "Dandy," | ) | |
| | ) | |
| JORGE PARADA, | ) | |
| a.k.a. Enrique Blanco Hernandes, | ) | |
| a.k.a. "Rama," | ) | |
| | ) | |
| Defendants. | ) | |

**GOVERNMENT'S OPPOSITION TO DEFENDANTS' POST-TRIAL MOTIONS**

The United States of America, through undersigned counsel, hereby opposes defendant Gabriel Hosman Perez-Amaya's June 23, 2009 motion for a new trial (Doc. 284), as well as defendant Jorge Parada's July 2, 2009 motion for a judgment of acquittal and/or a new trial (Doc. 287).

**BACKGROUND**

Defendants Rafael Parada-Mendoza and Gabriel Hosman Perez-Amaya, both members of MS-13, were convicted on all counts stemming from the murder of a rival gang member in Springfield, Virginia on December 2, 2007. During a twelve-day jury trial, the government presented over forty witnesses and introduced more than one hundred exhibits into evidence, proving beyond a reasonable doubt that Parada-Mendoza and Perez-Amaya murdered Christian Argueta because the victim was a member of the rival South Side Locos gang. That evidence

included, among other things, testimony by the defendants' fellow gang members that both

Parada-Mendoza and Perez-Amaya made repeated statements admitting their role in the murder;

Perez-Amaya's confession to Detective Emmanuel Salazar detailing his role and that of Parada-

Mendoza in the murder, and testimony by the government's gang expert, as well as members of

MS-13, that the gang requires its members to confront, attack, and kill rival gang members.  By

convicting both defendants Perez-Amaya and Parada-Mendoza on all counts, the jury thus

manifestly rejected Perez-Amaya's alternative explanation that he, not Parada-Mendoza, killed

the victim and that he did so in self-defense and heat of passion.

The jury also convicted all three defendants for participating in a conspiracy to distribute

cocaine.  At trial, the government presented four categories of evidence demonstrating defendant

Jorge Parada's guilt in the drug trafficking conspiracy.  First, Parada's coconspirators testified

that Parada was a participant in an overall scheme to distribute cocaine, which entailed regular

meetings of the Pinos clique of MS-13 during which cocaine was given to the members in

attendance to sell on behalf of the gang.  Second, an undercover detective testified about

numerous controlled buys with members of the Pinos clique, including a February 2008 drug

deal that led almost immediately thereafter to a police stop in which Parada was involved.  Third,

a customer of the conspiracy testified about numerous cocaine transactions with members of the

Pinos clique, including at least one occasion on which Parada was present and knew that cocaine

was being sold.  Finally, a police officer from Dallas, Texas testified about an occasion when he

bought crack cocaine directly from defendant Parada.

**I.      The Court Correctly Instructed the Jury Regarding the Purpose Element in 18 U.S.C. § 1959.**

Defendant Perez-Amaya requests that this Court "set aside the jury verdict in this cause

and order a new trial" with regards to Counts One, Two, Three, and Four of the Third

Superseding Indictment.  Doc. 284, at 1.  For the following reasons, Perez-Amaya's motion should be denied.

Federal Rule of Criminal Procedure 33 authorizes a court to grant a new trial "if the interest of justice so requires."  "In general, courts appropriately do not favor motions for a new trial and exercise great caution in granting them."  *United States v. Horton*, 716 F. Supp. 927, 929 (E.D. Va. 1989).  A district court thus "should exercise its discretion to award a new trial sparingly, and a jury verdict is not to be overturned except in the rare circumstance when the evidence weighs heavily against it."  *United States v. Smith*, 451 F.3d 209, 217 (4th Cir. 2006) (internal quotation marks omitted).

When a defendant claims that the district court erroneously instructed the jury, the courts assess "whether, taken as a whole, the instruction fairly states the controlling law."  *United States v. Cobb*, 905 F.2d 784, 789 (4th Cir. 1990).  "[E]ven where use or denial of a jury instruction is in error, reversal is warranted only when the error is prejudicial based on a review of the record as a whole."  *United States v. Ellis*, 121 F.3d 908, 923 (4th Cir. 1997).  In evaluating whether any such error was harmless, the court must determine what effect the instruction "had upon the guilty verdict in the case at hand by looking to the basis on which the jury *actually rested* its verdict."  *United States v. Hastings*, 134 F.3d 235, 241 (4th Cir. 1998) (internal quotation marks omitted).  Thus, an "error may be disregarded as harmless if a reviewing court can determine, beyond a reasonable doubt, that a correctly instructed jury would have reached the same conclusion."  *Id.*

18 U.S.C. § 1959 applies to crimes of violence committed "for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity."  In explaining this fifth element of the offenses charged in Counts One, Two, and

3

Three of the Third Superseding Indictment, the Court instructed the jury, in pertinent part, as

follows:

> The fifth element . . . that the government must prove beyond a reasonable doubt is that at
> least one of a charged defendant's purposes in committing the violent crimes alleged in
> each count was to maintain or increase his position in the racketeering enterprise.  In
> determining whether one of a defendant's purposes was to "maintain" or "increase" his
> position in the enterprise, you should give those words their ordinary meaning. . . . You
> need not, however, find that maintaining or increasing position in the enterprise was the
> defendant's sole or even principal motive.  It is sufficient if you find that the defendant
> conspired and did commit violent crimes *because he knew it was expected of him by
> reason of his membership in the enterprise or that he committed it in furtherance of that
> membership*.

Jury Instruction No. 50 (emphasis added).  In so instructing the jury, the Court declined Perez-

Amaya's invitation to impose a heightened burden on the government to prove that the

defendant's "substantial purpose" was to maintain or increase his position in the enterprise, or

that the defendant committed a violent crime "in large part" because of his gang membership.

*See* Defs.' Proposed Instruction No. 14.

   The Court's instruction in this case correctly stated the governing law, as established in

*United States v. Concepcion*, 983 F.2d 369 (2d Cir. 1992), and *United States v. Fiel*, 35 F.3d 997

(4th Cir. 1994).  In *Concepcion*, the Second Circuit stated that the phrase "for the purpose of . . .

maintaining or increasing position in" the enterprise must be "accorded its ordinary meaning."

*Concepcion*, 983 F.2d at 381.  Based on that statutory language, as well as its legislative history,

the court "reject[ed] any suggestion that the 'for the purpose' element requires the government to

prove that maintaining or increasing position in the RICO enterprise was the defendant's sole or

principal motive."  *Id.*  Rather, § 1959 requires only that the defendant's "general purpose in

[committing an alleged crime of violence] was to maintain or increase his position in the

enterprise."  *Id.*  Accordingly, the court held, "[w]e consider the motive requirement satisfied if

the jury could properly infer that the defendant committed his violent crime *because he knew it*

4

*was expected of him by reason of his membership in the enterprise or that he committed it in furtherance of that membership.*"  *Id.* (emphasis added); *see also Fiel*, 35 F.3d at 1004 (adopting Second Circuit's analysis of "purpose" element); *United States v. Banks*, 514 F.3d 959, 965 (9th Cir. 2008) (collecting cases).

    The instruction given by the Court in this case, particularly when taken as a whole, accurately applied the governing law.  Not only did the Court correctly instruct the jury that the defendant's gang membership need not account for "the defendant's sole or even principal motive" in committing the charged crimes of violence, *see Concepcion*, 983 F.2d at 381, Instruction No. 50 also specifically tracked, in almost verbatim form, the motive requirement adopted in *Concepcion* and *Fiel*.  As the Court stated, "It is sufficient if you find that the defendant conspired and did commit violent crimes *because he knew it was expected of him by reason of his membership in the enterprise or that he committed it in furtherance of that membership*."  Jury Instruction No. 50 (emphasis added).

    Although the Court's instruction directly adopted the operative standard established in *Concepcion* and *Fiel*, Perez-Amaya nevertheless suggests that the Court erred because the instruction did not *also* use the phrases "general purpose" or "integral aspect of membership" employed in both *Concepcion* and *Fiel*.  The plain language of the courts' holding in *Concepcion* and *Fiel*, however, is clear:  If a jury could "properly infer" that the defendant acted "because he knew it was expected of him by reason of his membership in the enterprise or . . . in furtherance of that membership," the purpose requirement in § 1959 is "satisfied."  Such a finding is thus equivalent to a finding that the defendant's "general" purpose was to maintain or increase his position in the enterprise and that it was an "integral aspect" of his membership; indeed, that is the only way such a finding could "satisf[y]" the "general purpose" and "integral aspect"

standards underlying § 1959.  Put simply, nothing in either *Concepcion* or *Fiel* requires the talismanic incantation of the word "general" or "integral," especially where, as here, the instruction correctly stated the operative standard of law—namely, that the defendant committed the violent crime "because he knew it was expected of him by reason of his membership in the enterprise or . . . in furtherance of that membership," *Concepcion*, 983 F.2d at 381; *Fiel*, 35 F.3d at 1004.

Perez-Amaya nevertheless seeks to take four words in the Court's instruction out of context.  *See* Jury Instruction No. 50 (requiring government to prove "that *at least one of* a charged defendant's purposes in committing the violent crimes alleged in each count was to maintain or increase his position in the racketeering enterprise") (emphasis added).  In so arguing, Perez-Amaya relies primarily on the Ninth Circuit's decision in *United States v. Banks*, 514 F.3d 959 (9th Cir. 2008), which reversed convictions under the VICAR statute where the district court's instruction permitted the jury to convict the defendant based on an "incidental" motive to maintain or increase his position in the enterprise.  *Id.* at 968-69.  That case, however, is distinguishable on both the law and the facts.

First, the *Banks* court itself recognized that a finding of mixed motives is permissible. Because "[p]eople often act with mixed motives," *id.* at 969, the court agreed with several other courts, including the Fourth Circuit, that "the purpose element does not require the Government to show that the defendant was solely, exclusively, or even primarily motivated by a desire to gain entry into, or maintain or increase his status within, the criminal organization," *id.* at 968. In so holding, the court emphasized that Congress "intended VICAR, like RICO, to be liberally construed to effectuate its remedial purposes," and thus courts are not required "to busy themselves with ranking the reasons that a defendant had for committing the offense."  *Id.* at 967

(internal quotation marks and alteration omitted).  As the *Banks* court stated, "It would make little sense to provide a safe-harbor from VICAR for gang members who can offer a plausible alternative motivation for their acts.  We do not believe Congress thought the range of human motivations can be so easily catalogued and prioritized." *Id.*; *see also Concepcion*, 983 F.2d at 381 (§ 1959 applies to defendant "who committed an underlying crime of violence with *a motive* of retaining or enhancing [his] position" in the enterprise) (emphasis added).

The *Banks* court, however, reversed the VICAR convictions at issue because the instruction given by the district court repeatedly, and unambiguously, emphasized that a merely "incidental" purpose could be sufficient to convict the defendant.  *Banks*, 514 F.3d at 968-69. The district court's instruction in *Banks*, for example, expressly stated that the jury "need *only* find that" maintaining or increasing the defendant's position in the enterprise "was *one* of his purposes" or that he was motivated "*at least in part*" because of his gang membership.[1] *Id.* at 965 (first emphasis added).  By doing so, "the district court ran the risk that the jury would focus

---

[1] Because the *Banks* court recognized that the question in that case was "a close one," 514 F.3d at 969, the district court's instruction warrants full quotation here:

> As to the fifth element, the Government must prove that *at least one of* the Defendant's purposes or motives in committing the offense (for Count One, Attempted Murder) was to maintain or increase his position in a criminal enterprise.  In this case, the alleged enterprise is the Rolling 60s Crips.  It is not necessary for the Government to prove that this motive was the sole purpose, or even the primary purpose of the Defendant in committing the charged crime.  *You need only find that it was one of his purposes*.  This element is satisfied if the Defendant committed the charged violent crime *at least in part* because he knew it was expected of him by reason of his membership in the enterprise or that he committed it in furtherance of that membership.  In determining the Defendant's purpose in committing the alleged crime, you must determine what he had in mind. Since you cannot look into a person's mind, you have to determine purpose by considering all of the facts and circumstances before you.

Br. of Appellant, *United States v. Banks*, 2006 WL 2379635, at *9 (9th Cir. Jan. 17, 2006) (emphases added).

not on Banks's general purpose in committing these crimes and its relationship to his status in the gang, but merely on his status as a gang member." *Id.* at 969.  Because the district court's instruction permitted the jury to convict the defendant if his gang membership "had any role, no matter how incidental, in his decision to commit a violent act," and because the defendant presented a plausible alternative motivation for his actions, the Ninth Circuit reversed the VICAR convictions.  *Id.* at 968-69.

The instruction issued by the Court in this case, by contrast, avoided the error found to have been committed by the district court in *Banks*.  Although the Court's instruction here referred to proof of "at least one of" a defendant's purposes in committing the charged offenses, that single phrase simply recognized the possibility that a defendant can act with mixed motives—a possibility also recognized by *Banks*, *Concepcion*, and *Fiel*.  Unlike *Banks*, however, the Court's instruction in this case did not instruct the jury that it could convict the defendant if it "*only*" found that maintaining or increasing the defendant's position in the gang "was *one* of his purposes" or that he was motivated "*at least in part*" because of his gang membership.  *Banks*, 514 F.3d at 965 (first emphasis added).  The Court's instruction thus did not invite the jury to convict the defendant merely for an "incidental" purpose.  *Id.* at 968-69.  Nor did it "make gang membership a status offense such that mere membership plus proof of a criminal act would be sufficient to prove a VICAR violation," *id.* at 968—particularly given that the Court separately instructed the jury in Instruction No. 32 that "[i]t is not a crime to be a member of or associated with MS-13."

Although the Court's instruction here, unlike in *Banks*, did not repeatedly authorize the jury to convict the defendant for an "incidental" purpose, Perez-Amaya maintains that the Court should have issued an instruction with some combination of phrases such as "general purpose,"

"integral aspect," "substantial purpose," and "in large part."  *See* Doc. 284, at 4.  As noted above,

however, the operative standard from *Concepcion* and *Fiel* on which the jury was instructed—

that the defendant committed the violent crime "because he knew it was expected of him by

reason of his membership in the enterprise or . . . in furtherance of that membership,"

*Concepcion*, 983 F.2d at 381; *Fiel*, 35 F.3d at 1004—"satisfied" the "general purpose" and

"integral aspect" standards referenced by the Second and Fourth Circuits, *see Concepcion*, 983

F.2d at 381; *Fiel*, 35 F.3d at 1004.  Similarly, the *Banks* court's single reference to "a substantial

purpose" was made in a limited context to contrast the "incidental" purpose on which the jury

could have convicted under the district court's instruction in that case.  *See Banks*, 514 F.3d at

969.  Finally, the phrase "in large part" actually *adds* language to the governing standard adopted

in *Concepcion* and *Fiel*, thus suggesting a heightened burden on the government beyond that

required by either case.  *Compare Banks*, 514 F.3d at 965 (requiring defendant to be motivated

"*at least in part*" because of his gang membership), *and* Defs.' Proposed Jury Instruction No. 14

(referring to "in large part"), *with Concepcion*, 983 F.2d at 381 (referring to neither "at least in

part" nor "in large part").

     The outcome in *Banks*, moreover, is not only distinguishable on the law, but also the

facts.  In *Banks*, the defendant presented a plausible alternative theory that he was motivated to

murder a rival gang member because of his "personal animosity" towards the victim, rather than

to maintain or increase his position in the gang.  *United States v. Banks*, 514 F.3d 959, 969 (9th

Cir. 2008).  The murder attempts were each planned and directed at one individual, and the

defendant referred to his efforts as part of an "ongoing battle" with the target.  *Id.* at 963.

Because, on these facts, "a jury could reasonably have concluded that Banks was motivated

primarily, or even exclusively, by a personal vendetta against [the victim]," *id.* at 971, the court

concluded that an "erroneous" jury instruction could have materially affected the outcome in that case, *id.* at 969.

Attempting to shoehorn his case into the *Banks* analysis, Perez-Amaya maintains that he too presented, through his own testimony, a plausible alternative explanation for his actions— namely, that he, not defendant Parada-Mendoza, shot and killed Christian Argueta, and that he did so in self-defense and heat of passion.  The jury in this case, however, was instructed as to the elements of Perez-Amaya's self-defense and heat of passion claim, and both instructions stated clearly that the government was required to prove "beyond a reasonable doubt" that Perez-Amaya did *not* act in either self-defense or heat of passion.  Jury Instruction No. 17 ("The government must prove beyond a reasonable doubt that defendant Gabriel Hosman Perez-Amaya did *not* act in self-defense as described in this instruction.") (emphasis added); Jury Instruction No. 18 ("Before you may find that the defendant acted with malice, the government must prove the *absence* of heat of passion beyond a reasonable doubt.") (emphasis added).  By convicting the defendant of all counts, the jury unambiguously rejected Perez-Amaya's claims of self-defense and heat of passion.  Simply by virtue of the jury's verdict, Perez-Amaya's asserted alternative "purpose" of self-defense and heat of passion thus could have had no effect on the outcome in this case, irrespective of the particular wording in Instruction No. 50.

Nor is it enough for Perez-Amaya to argue that even if the jury expressly rejected his self-defense and heat of passion claims, he nevertheless acted out of some motivation (for example, fear) that was (i) insufficient to satisfy a self-defense or heat of passion claim but (ii) nevertheless sufficient for the jury to conclude that the defendant did not act "for the purpose" of maintaining or increasing his position in the enterprise.  Any such argument rests on a key assumption—namely, that the jury found credible Perez-Amaya's testimony that he, not Parada-

Mendoza, shot and killed Christian Argueta, and that he acted out of fear, not because of his gang membership. That assumption, however, is likewise belied by the jury's verdict in this case. For example, if the jury had given any credence at all to Perez-Amaya's version of events, it could not have convicted Parada-Mendoza of Count Two (murder in aid of racketeering) because, on Perez-Amaya's telling, Parada-Mendoza played no role at all in the murder of Christian Argueta, even as an aider and abettor. Likewise, if the jury had deemed Perez-Amaya's testimony to be credible, it could not have convicted either Perez-Amaya or Parada-Mendoza on Count Three for the attempted murder of Ismael Rangel, inasmuch as Perez-Amaya denied making any such attempt. Finally, if the jury had credited Perez-Amaya's testimony, it could not have convicted *either* Perez-Amaya or Parada-Mendoza on Count One for conspiracy to murder a rival gang member, given Perez-Amaya's testimony that the confrontation with Argueta and Rangel was entirely spontaneous and unplanned.[2]

Because Perez-Amaya and Parada-Mendoza were convicted on all counts, the verdict in this case supports the unmistakable conclusion that the jury rejected Perez-Amaya's alternative version of reality *in its entirety*, concluding that Parada-Mendoza, not Perez-Amaya, fired the fatal shots at Christian Argueta. In so doing, the jury "necessarily credited," *United States v. Hastings*, 134 F.3d 235, 241 (4th Cir. 1998), the government's evidence showing that both defendants acted consistently with their repeated admissions to fellow gang members after the murder, as well as Perez-Amaya's confession to Detective Salazar, and that in doing so, the defendants committed the charged crimes in furtherance of their membership in MS-13, which requires its members to confront, attack, and kill rival gang members. *See, e.g.*, *United States v.*

---

[2] This is particularly the case given that defendant Jorge Parada was acquitted on Count One, thus suggesting that the only conspiracy found by the jury was a conspiracy between Perez-Amaya and Parada-Mendoza to murder Christian Argueta outside the Cerro Grande, rather than a conspiracy to go "patrolling" for rival gang members earlier in the evening.

*Smith*, 413 F.3d 1253, 1278 (10th Cir. 2005) (citing "extensive testimony at trial that acts of violence were a common part of KMD's culture and that members were expected to retaliate against acts of violence committed on fellow members"); *Fiel*, 35 F.3d at 1004-05 (purpose element satisfied where jury could reasonably conclude that participation in inter-gang war was expected of gang members). Perez-Amaya's suggestion that any potential error in Instruction No. 50 would have had any effect whatsoever, much less a prejudicial effect, on the jury's verdict is thus without merit and should be rejected as foreclosed by the jury's factual findings in this case.

## II.    The Government Proved That Parada Was a Member of a Drug Trafficking Conspiracy.

In his renewed Rule 29 motion, defendant Jorge Parada contends that the evidence presented at trial was insufficient because he claims that it did not prove beyond a reasonable doubt that he was a member of the drug trafficking conspiracy. Parada's claim is both legally and factually without merit.

When determining sufficiency of the evidence, the Court should consider the evidence in the light most favorable to the government and determine if substantial evidence supports the jury's verdict. *United States v. Wills*, 346 F.3d 476, 495 (4th Cir. 2003). Substantial evidence is "that evidence which a 'reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt.'" *United States v. Newsome*, 322 F. 3d 328, 333 (4th Cir. 2003) (quoting *United States v. Burgos* 94 F.3d 849, 862 (4th Cir. 1996)). In a sufficiency of the evidence challenge, "the relevant question is not whether the appellate court is convinced of guilt beyond a reasonable doubt, but rather whether, viewing the evidence in the light most favorable to the government, any rational trier of facts could have found the defendant guilty beyond a reasonable doubt." *United States v. Tresvant,* 677 F.2d

12

1018, 1021 (4th Cir. 1982) (citations omitted).  The determination of the credibility of the

witnesses is a role reserved solely for the jury and not the court.  *United States v. Murphy,* 35

F.3d 143, 148 (4th Cir. 1994).

 At trial, the government presented abundant evidence that Parada was a member of a

conspiracy to distribute cocaine.  "To prove a conspiracy under 21 U.S.C. § 846, the government

must prove (1) an agreement between two or more persons to engage in conduct that violates a

federal drug law, (2) the defendant's knowledge of the conspiracy, and (3) the defendant's

knowing and voluntary participation in the conspiracy."  *United States v. Strickland*, 245 F.3d

368, 384-85 (4th Cir. 2001).  Proof of an overt act is not required in a drug trafficking

conspiracy.  *United States v. Shabani*, 513 U.S. 10, 17 (1994); *United States v. Burns*, 990 F.2d

1426, 1435 (4th Cir. 1993).  "Once it has been shown that a conspiracy exists, the evidence need

only establish a slight connection between the defendant and the conspiracy to support a

conviction."  *United States v. Brooks*, 957 F2d. 1138, 1147 (4th Cir. 1992).  "It is of course

elementary that one may be a member of a conspiracy without knowing its full scope, or all its

members, and without taking part in the full range of its activities or over the whole period of its

existence."  *United States v. Banks,* 10 F.3d 1044, 1054 (4th Cir. 1993).

 Here, the evidence that a conspiracy to distribute cocaine existed was simply

overwhelming.  Parada's coconspirators testified that the Pinos clique was involved in the

distribution of cocaine in Northern Virginia.  They testified that the cocaine was obtained from

various sources of supply and distributed to the Pinos members at regular meetings.  The

members of the clique were then expected to sell the cocaine and return the proceeds to the

clique.  These proceeds were then used to support MS-13 in all of its activities.  These members

testified that Parada was a member of the Pinos clique, he attended meetings where the cocaine

13

was distributed, and he personally distributed cocaine.  This testimony was corroborated by a police officer who performed a traffic stop of Alexander Portillo, immediately after he sold cocaine to an undercover police officer.  Portillo was in the car with defendants Perez-Amaya and Parada.

The testimony of Parada's coconspirators was also corroborated by the testimony of Jose Aguilar, a cocaine customer of MS-13.  Aguilar testified about numerous cocaine buys from members of the gang.  He testified that he would call one member of the clique and another member would sometimes deliver the cocaine.  He also testified that defendant Parada was present on at least one of these cocaine deals and that he knew what was going on.  Finally, a police officer from Dallas, Texas testified about a prior crack cocaine purchase from Parada.  This testimony further showed Parada's knowledge and intent to distribute cocaine in the instant conspiracy.

Parada has further moved for a judgment of acquittal based upon "inherently incredible" testimony.  "In evaluating the sufficiency of the evidence, we do not review the credibility of witnesses and assume the jury resolved all contradictions in their testimony in favor of the government."  *United States v. Sun*, 278 F.3d 302, 313 (4th Cir. 2002) (citing *United States v. Romer* 148 F.3d 359, 364 (4th Cir. 1998)).  The jury heard extensive cross-examination and argument designed to highlight the inconsistencies of the witnesses and reached the conclusion that Parada was guilty beyond a reasonable doubt.  Of course, as in all cases, there was inconsistent testimony between the witnesses.  However, the witnesses were consistent in their testimony on the critical issues in this case, demonstrating that the defendant was a member of the drug trafficking conspiracy.

III.    **Parada Was Not Entitled to an Instruction on Multiple Conspiracies.**

Parada next claims that he was entitled to an instruction on multiple conspiracies.  He claims now, for the first time, that it was his theory of the defense.  He also claims that the instructions given allowed the jury to convict him merely by finding him to be a member of MS-13.  Parada's claims are wholly unsupported by the law and the facts presented at trial and should be denied accordingly.

It is clear from the evidence presented at trial that Parada was not entitled to an instruction on multiple conspiracies.  "A multiple conspiracy instruction is not required unless the proof at trial demonstrates that defendants were involved *only* in 'separate conspiracies *unrelated* to the overall conspiracy charged in the indictment.'" *United States v. Kennedy*, 32 F.3d 876, 884 (4th Cir. 1994) (emphases added); *see United States v. Mills*, 995 F2d 480, 485 (4th Cir. 1993) ("A court need only instruct on multiple conspiracies if such an instruction is supported by the facts.").  The evidence at trial proved an overall conspiracy involving members of the Pinos clique of MS-13 in which they sold cocaine in order to support the activities of the gang.

Remarkably, Parada now argues that his theory of the case was that there were multiple conspiracies and therefore he was entitled to an instruction on multiple conspiracies.  However, Parada's theory at trial was quite different.  At trial, Parada argued that he was not involved in drug trafficking at all, that he had no knowledge of his fellow gang members' drug trafficking, and that there was, actually, no conspiracy at all, let alone multiple conspiracies.  In his motion, Parada fails to identify what the other conspiracy was and how he was involved in it.

Parada also argues in his motion that the jury could have found him guilty of the drug trafficking conspiracy simply by finding that he was a member of MS-13.  This is also without

merit because the Court gave a specific instruction to the jury that being a member of MS-13, by itself, was not a crime.  Because the defendant has failed to demonstrate that an instruction on multiple conspiracies should have been given, his motion should be denied.

## **CONCLUSION**

For the reasons stated above, defendant Perez-Amaya's and Parada's post-trial motions should be denied.

Respectfully submitted,

Dana J. Boente
United States Attorney

By:     _____/s/_____
Jonathan L. Fahey
Jeanine Linehan
Inayat Delawala
Assistant United States Attorneys
Attorneys for the United States
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
703-299-3700 (phone)
703-299-3982 (fax)
jonathan.fahey@usdoj.gov
jeanine.linehan@usdoj.gov
inayat.delawala@usdoj.gov

Dated: July 17, 2009

<u>CERTIFICATE OF SERVICE</u>

I certify that on July 17, 2009, I electronically filed the foregoing pleading with the Clerk

of Court using the CM/ECF system, which will send a notification of such filing to the

following:

Jerome Aquino
Jay Connell
Counsel to Gabriel Hosman Perez-Amaya
5901 Kingstowne Village Parkway, Suite 302
Alexandria, VA 22315

Michael Arif
Matthew Greene
Counsel to Rafael Parada-Mendoza
8001 Braddock Road, Suite 100
Springfield, VA 22151

John Iweanoge
Counsel to Jorge Parada
1026 Monroe Street, NE
Washington, DC 20017

By: _____/s/_____
Jonathan L. Fahey
Assistant United States Attorney
Attorney for the United States
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
703-299-3700 (phone)
703-299-3982 (fax)
jonathan.fahey@usdoj.gov